## HELD AT HARTFORD FOR THE COUNTIES OF HARTFORD, WINDHAM, LITCHFIELD, MIDDLESEX AND TOLLAND,

ON THE FIRST TUESDAY OF OCTOBER, 1883.

Present,

CARPENTER, PARDEE, LOOMIS AND GRANGER, Js.

AUSTIN F. WILLIAMS vs. WINTHROP M. WADSWORTH.

The plaintiff in 1851 purchased of the owner of land through which ran a brook, the right to build and maintain upon the land a dam and divert to his own land, not riparian, as much water as would run through a three-inch pipe. He built the dam and from it laid a two-inch pipe to his house, and later to the houses of other persons who paid him for the water, and soon after obtained from all the lower proprietors on the brook a perpetual release from all claim for damages for the diversion. In 1881 the defendant purchased an acre of land higher up on the stream, and began and had since continued to divert as much water as could pass through a two-inch pipe to his farm, about half a mile distant, no part of which was riparian, and there to use it at his house and barn, for a fountain, and for watering his lawn and the street, returning none to the brook. The brook was always much reduced in quantity in the summer, and in times of severe drouth would all pass through an orifice one inch and a half in diameter. In a suit for an injunction against a diversion of the water by the defendant in such a way as to prevent the plaintiff's getting a supply for his own pipe, it was held—

1. That while the defendant, as an upper riparian owner, had a right which took precedence of all rights below, to consume water for drinking, culinary and other domestic uses, and for the watering of animals, yet this right was confined to riparian land.

2. That the plaintiff, whatever might be the effect of the conveyance of the right to him by a riparian owner, yet having under it diverted and used

the water for more than fifteen years, had acquired the right to have the stream come to him in its accustomed flow for such use, which right the defendant was so far bound to respect that he could not, as an upper riparian owner, subsequently commence uses of the water, injurious to the right, on land not riparian.

Whether the plaintiff would not have had a right, which was entitled to judicial recognition and protection, before the end of the fifteen years: *Quære.*

Where the plaintiff, having such water rights, sold the dwelling house which he had occupied with a right to a portion of the water, retaining his right to the remainder, it was held that he had a property in what remained and a standing in court by reason of it.

The defendant, intending to divert the water in the manner stated, notified the plaintiff of his intention and requested him to institute legal proceedings by way of prevention before expense was incurred. The plaintiff did not do so, but the defendant had full knowledge that the plaintiff disputed his right to divert the water in the way he proposed. Held that the plaintiff had not waived his rights by neglecting to take legal proceedings at the time.

Assignees in bankruptcy and trustees in insolvency hold the estates of the debtors upon a trust, first, to apply so much as is necessary to the payment of proven debts and attendant expenses, and secondly, to return whatever surplus may remain to the original owner. Where such a surplus is thus left upon a mere naked trust to reconvey, a court of equity will protect the rights of the equitable owner in it from threatened injury upon his application.

A conveyance of "a certain piece of land with the buildings thereon, and appurtenances," but making no mention of any water rights, does not carry with it the right of the owner to bring water from a stream on other lands by a pipe terminating at the house.

[Argued October 4th, 1883—decided June 13th, 1884.]

Suit for an injunction against the diversion of a stream of water; brought to the Superior Court in Hartford County, and heard before *Hovey, J.* The following facts were found by the court:

The parties, plaintiff and defendant, reside in the town of Farmington. Their residences are on the east side of the street called Main street, that of the plaintiff being south of that of the defendant, and between the two is a dwelling-house owned by another party. A stream of water, called Fulling-Mill Brook, runs from a hill in Farmington known as First Mountain, west and southwest through lands now or formerly owned by Augustus Ward and Susan Ward his

wife, bounded and described as in the complaint, and also through lands now or formerly owned by Solomon Cowles, Egbert Cowles, and heirs of Erastus Scott, deceased, and empties into Pequabuc River.

On May 10th, 1851, the plaintiff bought of the said Ward and wife, who then owned the described premises, certain rights in the water of the brook, which were conveyed to him by them by a quitclaim deed of that date, in which the rights conveyed were described as follows:—" All such right and title as we have or ought to have in or to so much of the water privilege known as the old Distillery Place, on the mountain road to the Pinacle, as is necessary to construct an aqueduct of three-inch bore, and the right at all times to take such quantity of water from said brook or reservoirs above as a three-inch pipe is capable of conveying from said brook or reservoirs; and also the right to make and maintain all aqueducts, reservoirs, or dams, and to turn the water into said aqueduct at any point on said privilege, or on the line of our lot near the yellow house; provided said reservoirs or aqueducts are so constructed as not to endanger the life or limbs of animals." Soon afterwards the plaintiff entered upon the premises and commenced the construction of works, deemed by him to be necessary, to convey the water of the stream, or so much thereof as he had the right to convey, to his residence on Main street in the village of Farmington, and completed their construction in 1852. The works constructed were a dam across the stream on the described premises; a well four feet deep, with sides four feet by three feet and six inches, upon the stream below the dam; an open artificial channel, twelve feet in length, from the dam to a box fourteen inches square, made of stone and cement, and set in the earth and covered by an iron grating; an iron pipe from the box to and into the upper side of the well, twelve feet in length and three inches in diameter at the box, and increasing to a diameter of four or five inches at the well; and another iron pipe, extending from the inside of the well, through the lower side thereof, to the dwelling-house and premises then owned and occupied by

the plaintiff on Main street, being a distance of one hundred and twenty-eight rods. This last pipe, from the well to a point eight rods below, was three inches in diameter, and the rest of the distance it was two inches in diameter; and the fall or difference in elevation between the upper and lower end of it is about fifty feet. The water of the stream was turned by means of the dam from the natural channel into the artificial channel, and was conveyed thence along the artificial channel to and into the box, through the iron grating which covered it, and thence through the first mentioned pipe into the well and into and through the last mentioned pipe from the well to the plaintiff's dwelling-house and premises. The well was constructed and since its construction has been used for the purpose of collecting the water of the stream and discharging it into and through the pipes below.

The plaintiff afterwards in 1856 and 1857 obtained from all the proprietors below, releases of their claims for his diversion of the water by his pipes, and a concession of the right so to divert it.

Immediately after the completion of his aqueduct, in 1852, the plaintiff commenced to use it, and ever since has used, maintained and repaired it, and drawn water through it, and diverted water from the stream by means of it; and has done so during the whole of that period, adversely as against all persons whose rights could be invaded by such a user. But, prior to 1856, he used the water only in connection with the dwelling-house and premises then owned and occupied by him. In 1856, however, he began to make market of the water and to convey it in pipes from the lower end of his main pipe on his premises to the premises of the purchasers, and has continued to do so ever since, receiving rent or compensation from the purchasers therefor. The number of premises to which he has thus conveyed water for rent or compensation increased from one in 1856 to seven at the time of the commencement of this action. The sums received by the plaintiff annually for water rents, up to the year 1881, amounted to $80, and

after that time to $120; the rents having been advanced
from the former to the latter amount in 1881.   There is a
good demand in Farmington for water to be supplied
through the plaintiff's aqueduct; and he contemplates in-
creasing the number of his customers, and can do so if his
water supply is sufficient.

The dwelling-house and premises owned and occupied by
the plaintiff at the time of the completion of his aqueduct,
with the privilege of using water needed in and upon the
same, were conveyed by the plaintiff to his daughter Catha-
rine D. Vorce, wife of A. D. Vorce, on April 1st, 1872, by
a quitclaim deed in which the right to the use of the water
was thus described:—" With the privilege of using all the
water from the aqueduct needed on the premises; the said
C. D. Vorce, his heirs and assigns, keeping the main pipe
from the mountain in repair and the distributing pipes on
the premises above named, allowing A. F. Williams to take
the water from the main and distributing pipes not needed
on the premises."   And since that time the dwelling-house
and premises have been occupied by the said Vorce and
wife, and have been supplied with water from the aqueduct,
as they had been before, from the time the aqueduct was
completed.   The premises of the plaintiff next north of the
premises conveyed to Mrs. Vorce have also been supplied
with water from the plaintiff's aqueduct since April 1st,
1872.   The plaintiff and Vorce have, upon their respective
premises, used the water for domestic and culinary pur-
poses, for watering horses and cattle, and for fountains and
irrigation.

The stream from which the water is taken is, in the win-
ter season, a stream of considerable size, and during that
season contains a volume of water largely in excess of that
which can be conveyed through the plaintiff's aqueduct,
and sufficiently large to operate a saw-mill and a grist-mill,
for which purpose it was once used.   But, in the summer
season, it usually becomes a very small stream, and, in sea-
sons of severe drought, is reduced to a flow which will
only fill a pipe an inch and a quarter to an inch and a half

in diameter. In dry seasons, generally, the stream is inadequate to supply the plaintiff's aqueduct with two inches of water, if the pipe is used for drawing water all the time.

The defendant was supplied with water by the plaintiff from the first of January, 1877, until about the first of October, 1881, when the supply ceased by the defendant's direction, the defendant having, before that time, laid an aqueduct of his own from the stream, above the works of the plaintiff, to his residence and premises, as hereinafter set forth.

On the ninth of September, 1881, the defendant purchased of one Dorman, and the latter conveyed to him, by deed of that date, three fourths of an acre, more or less, of land upon the stream above the premises formerly of the said Augustus and Susan Ward. On the tenth of September, 1881, the defendant also purchased of William Pentalow, (to whom the said Ward and wife had sold and conveyed the land in which they had assigned the water rights in question to the plaintiff, the conveyance to Pentalow being subject to those rights,) all his rights in the premises, and took a quitclaim deed of the same. This deed was executed by Pentalow and wife, and described the premises and rights conveyed as follows:—"All such right and title as we, the said Pentalow and wife, have or ought to have, in or to all the land comprising the basin of the lower Still Pond, being an eighth of an acre more or less, bounded on the north and east sides by the highway, and the other two sides by William Pentalow's land; and also the right to dam up and take water from the brook running through our premises, and whatever rights we may have in the old mill privileges; also the right to dig and lay water pipes across our land; reserving, however, the right to pasture the same as at present, during our natural lives, when not used for the purpose aforesaid."

On the western side of each of the parcels of land so purchased by the defendant of Dorman and Pentalow, there was, at the time of the purchases, an old dam across the stream, the one on land purchased of Dorman being

called the upper dam, and the one on land purchased of Pentalow the lower dam. The lower dam was originally built to raise a head and pond of water for the working of a distillery, and was maintained, after the distillery was discontinued and removed, for the working of a saw-mill, which was erected and stood on the site of the distillery, on a part of the premises formerly of Ward and wife. But that mill has been abandoned and destroyed many years.

The land purchased by the defendant of Dorman embraced the reservoir in which the water had been collected and ponded by means of the upper dam, and the parcel purchased of Pentalow embraced the reservoir in which the water had been collected and ponded by means of the lower dam.

Before these purchases were made the plaintiff had opened and shut and repaired the gates and regulated the flumes of both dams, and he did so for the purpose of acquiring title to the dams and control of the flumes and gates. But these acts were done without the knowledge of the owners of the dams, and the court does not find that the plaintiff acquired any title or right thereby. The dams were not otherwise repaired for a great number of years, either by the owners or by any other person. The defendant purchased the lands of Dorman and Pentalow, and repaired the upper dam, for the sole purpose of storing water from the stream in the winter, and other wet seasons, and diverting the same, as he might have occasion, to his premises on Main street in the village of Farmington.

On September 11th, 1881, the defendant, well knowing that the plaintiff disputed his right to divert the water of the stream in the manner contemplated by him and would oppose and resist the same by legal proceedings, notified him that he proposed to lay a pipe and take water through the same from the above land to his dwelling-house, and requested him, if he objected thereto, to commence proceedings, by injunction or otherwise, to prevent him from so doing, before he had incurrred any expense therein; but the plaintiff disregarded the request.

On the day following the defendant entered upon the

land purchased of Dorman, and commenced the work of repairing the upper dam, and in a few days completed it. In the bottom of the dam he placed a four-inch iron pipe, with a stop or gate therein, for drawing off the water when necessary for repairs and regulating the discharge of water from the reservoir created by the dam at other times ; and to this stop or gate was fitted a key, by means of which it could be locked and unlocked. The defendant also laid a two-inch galvanized iron pipe through the dam from the upper to the lower side thereof, and thence to his residence in Farmington, a distance of one hundred and seventy-two rods. It passes through the Dorman premises, and through the said Pentalow premises and lower dam, twice crosses the plaintiff's aqueduct, and crosses the land of four other parties than the defendant before reaching his residence. The fall from the upper to the lower end of this pipe is one hundred and four feet, and a little less than fifty-six rods of the pipe is in the defendant's land. He had the license, however, of the other parties through whose lands the pipe was laid to lay the same in and across their lands. The laying of the pipe was finished, so that water could be drawn through it, September 28th, 1881.

When the repairs of the dam from which the pipe was laid were completed, which was between the fifteenth and twentieth of September, 1881, the stop or gate to the pipe at the bottom of the dam was closed and locked by the defendant, and it so remained until on or about the seventh of October, 1881, when it was partly opened by the defendant so as to allow a portion of the water in the reservoir to pass through the last mentioned pipe into the channel of the stream below; and in that condition the stop or gate continued until about the last of October, 1881.

At that time the water of the stream, in consequence of heavy rains, rose and ran over the dam. The defendant then closed and locked the stop or gate, and has kept the same closed and locked at all times since, except when he has had occasion to repair the dam. The dam, however, was not tight, although the defendant intended it to be so,

and water has constantly escaped therefrom by leakages. The key to the stop or gate the defendant has at all times kept within his own control, and has refused to permit it to be put into the plaintiff's hands, or to allow the plaintiff to have any control over the dam or pipe, or in any manner to regulate the flow of water from the reservoir.

The expense incurred by the defendant in repairing the upper dam and removing a part of the lower dam and laying the pipes through the upper dam to his premises, was upwards of twelve hundred dollars.

Ever since September 28th, 1881, the defendant has diverted water from the stream at his pleasure, through his pipes to his premises, and has there used it for domestic and culinary purposes, for watering his horses and cattle, for supplying a fountain or fountains, and for sprinkling his lawn and the street in front of his dwelling-house. A considerable quantity of the water thus diverted has run to waste, and none of it has been restored to the stream. The dwelling-house and premises to which the water has been diverted are so situated that none of the water could be restored to the stream.

In the winter season, and in times of heavy rains, this diversion has caused no injury or damage to the plaintiff; but at times in the summer he has sustained injury by reason thereof. The pressure of water upon his pipe has been so much reduced thereby that he and Vorce have been unable, at times, to take water into the upper stories of their respective dwellings; the force of the water at outlets in their dwellings has also been greatly diminished thereby, and a portion of the time it has been impossible, by reason of such diversion of the water, to supply fountains on the grounds of Vorce or of the plaintiff, or to irrigate their respective premises. These are the only injuries which the plaintiff or Vorce have sustained by the defendant's diversion of water from the stream since he completed the repairs of his dam.

The defendant does not need a two-inch pipe in order to supply his dwelling-house, his barns, and the watering

troughs on his premises, with water sufficient for domestic and culinary purposes and for watering his horses and cattle. A pipe half an inch in diameter would supply him with all the water of which, for those purposes, he could make any reasonable use. The plaintiff has made complaint to the defendant of his diversion of the water; but the defendant has made no change in his use of the water in consequence thereof, and insists that he has the right to divert and use the water as he has done since his aqueduct was completed, and as he thinks proper.

The defendant claimed that the plaintiff cannot maintain the present action, because, at the times the acts complained of were committed, he had no title to the easement or right to draw water from the stream through the pipe laid by him to the premises occupied by Vorce, or to his own premises; and in support of this claim the defendant put in evidence a voluntary petition of the plaintiff to the District Court of the United States for the district of Connecticut, for the benefit of the bankrupt act then in force, the petition being dated January 27th, 1868; an adjudication of bankruptcy thereon against the plaintiff by that court on February 1st, 1868; the appointment by the court of Heman H. Barbour as assignee in bankruptcy, February 22d, 1868; and a deed from the register in bankruptcy to the assignee dated March 3d, 1868. The court, however, finds that the assignee (who has since deceased) never took possession of the easement or any of the water rights of the plaintiff, or treated them as any part of the plaintiff's assets in bankruptcy; that after the adjudication of bankruptcy the plaintiff settled with all creditors who proved claims against him and obtained their receipts in full, and also paid all costs and expenses of the bankruptcy proceedings, and obtained his discharge in bankruptcy on February 25th, 1871; and that ever since he has been, as he had been before, in full possession and control of the easement and of all the water rights, except such as he conveyed to Mrs. Vorce on April 1st, 1872, as hereinbefore stated.

The defendant also claimed that the plaintiff had lost his

right to maintain this action by reason of certain proceedings in insolvency against him; and as evidence in support of this claim, he laid in the petition of Edward Lambert & Co., creditors of the plaintiff, against him to the court of probate for the district of Farmington, dated February 6th, 1862, and filed February 7th, 1862, praying for the appointment of a trustee to take possession, manage, and dispose of the plaintiff's property for the benefit of all his creditors in proportion to their respective claims, and to vest the property in the trustee in pursuance of the state insolvent act. The defendant also laid in as evidence a copy of the record of the court of probate, dated March 6th, 1862, appointing Austin Hart as such trustee. As to these matters, the court finds that the plaintiff, after the institution of the proceedings in insolvency against him, settled with said Edward Lambert & Co., who were the only petitioning creditors, and that all expenses of the proceedings were fully paid; and that the proceedings were by the court discontinued on the 24th day of January, 1863. The said Hart, as trustee of the estate of the plaintiff in insolvency, never took possession of the easement and water rights of the plaintiff, nor made any claim to them; and the plaintiff has been in the undisputed and exclusive control of the same ever since those proceedings were commenced, as he had been before, except only the rights conveyed by him to Mrs. Vorce.

The defendant, however, offered in evidence the deed of said Hart, as trustee, to the defendant of certain real estate, including the Vorce premises, into which the lower end of the pipe or aqueduct of the plaintiff originally extended and still extends, and in which it originally terminated; but the deed made no mention of the pipe or aqueduct or of the easement or water rights. The defendant insisted that the easement or water rights passed by the deed to him as an appurtenance of the premises so conveyed to him by the trustee, the language of the deed being "a certain piece of land with the buildings thereon standing, * * with the appurtenances thereof." The court ruled otherwise, and

rejected the deed as evidence. To this ruling and action of the court the defendant excepted, and the statement of the exception was reduced to writing and signed by the presiding judge and filed. Said deed is dated January 5th, 1863. The court also held that the plaintiff had not lost his right to maintain the present action by the above proceedings in bankruptcy or insolvency, or by any of the aforesaid conveyances.

Upon the facts thus found, the plaintiff claimed—

1. That he is entitled to maintain his pipe as constructed and to draw through it at all times, and to have the full flow of the stream whenever needed for that purpose.

2. That the defendant has no right to divert the stream for the purposes found in the case, so as to impair the supply of the plaintiff's pipe.

3. That the defendant by purchasing, on September 9th and 10th, 1881, two parcels of land, in all being about seven eighths of an acre, upon the stream above the plaintiff's well, did not thereby acquire any right to divert the water of the stream and conduct the same away from his riparian premises to his house in Farmington village so as thereby to impair the supply of the plaintiff's aqueduct.

The defendant claimed that the plaintiff was not entitled to the relief prayed for, or to equitable relief in any form, and that his complaint should be dismissed, because he claimed :—

1. That the defendant, as a riparian proprietor on the stream, had a right, as against the plaintiff, to take water therefrom to his dwelling-house, in the manner and quantity that he had taken it and for the uses and purposes for which he had taken and applied it.

2. That in consequence of the proceedings in bankruptcy and insolvency, and of the conveyance to Mrs. Vorce, the plaintiff had lost the legal title to the water rights derived from Ward and wife, and consequently the right to maintain the present action.

3. That by reason of the notice by the defendant to the plaintiff on September 11th, 1881, that he proposed to lay

his pipe from his land on the stream to his dwelling-house, and of his request to the plaintiff, if he objected thereto, to commence proceedings by injunction or otherwise against him, to prevent him from so doing before he had incurred any expense therein, and the neglect of the plaintiff to pay any attention to the notice or to make objection to the laying of the pipe by the defendant till after the work was completed and the expense thereof incurred, the plaintiff was estopped from maintaining the present action.

4. That the plaintiff, by his conveyances from Ward and others, had obtained no right to maintain the present action, as he was not a riparian proprietor; and his agreement with Ward gave him no rights to the use of the water as against upper riparian proprietors.

5. That it does not appear from the finding that the plaintiff has sustained or is in danger of sustaining such injury by the defendant's diversion and use of water from the stream, as entitles him to the relief which he seeks, or to any other equitable relief.

But the court rendered the following judgment in favor of the plaintiff, overruling the claims of the defendant and a part of the claims of the plaintiff.

"Whereupon it is adjudged that, until this court shall make further and other order in the premises, the defendant be and hereby is strictly enjoined and commanded, at all times after the 31st of May, 1883, when the whole volume of water running and flowing in said stream into the defendant's said reservoir will pass through an orifice two and one half inches or less in diameter, to desist from detaining or diverting from its natural course, above the said dam of the plaintiff, a larger quantity or portion of the said water than will pass through an orifice or aqueduct one half of an inch in diameter, unless he return the surplus to the said stream before it reaches the plaintiff's said dam, on penalty of twenty dollars for every day or fraction of a day that he shall detain or divert a larger quantity or portion of said water in violation of this injunction; and at all times after the said 31st day of May, 1883, when the volume of water

running and flowing in said stream into the defendant's said reservoir is so large that it will not pass through an orifice two and one half inches in diameter, the defendant is strictly enjoined and commanded, until this court shall make further and other order in the premises, to desist from detaining, or diverting from its natural course above the said dam of the plaintiff, a larger quantity or portion of the water so running and flowing into said reservoir than the excess above the quantity or portion necessary to fill an orifice and supply an aqueduct two inches in diameter, unless he return the surplus of the water diverted to the said stream before it reaches the plaintiff's said dam, on penalty of twenty dollars for every day or fraction of a day that he shall detain or divert a larger quantity or portion of said water in violation of this injunction."

Both parties appealed from the judgment.

*R. D. Hubbard* and *L. E. Stanton,* for the plaintiff.

1. The plaintiff did not lose his right to the easement or his right to maintain this action by virtue either of the proceedings in bankruptcy or of those in insolvency. Both the assignee and trustee declined to take possession of the easement; each of them left the plaintiff in full possession of it. An assignee in bankruptcy or trustee in insolvency may reject property which is of no value to the estate. Such property remains in the bankrupt or insolvent, and no one can dispute his possession of it. *White* v. *Griffing,* 44 Conn., 437; *Filley* v. *King,* 49 id., 211; *Smith* v. *Gordon,* 6 Law Reporter, 315. Neither has he lost his right of action by the deed to Mrs. Vorce. That deed conveyed only the homestead on which the lower end of the plaintiff's pipe is located. It expressly reserves to the plaintiff the right "to take water from the main and distributing pipes not needed on the premises." The deed from Austin Hart. trustee, to the defendant, did not take away the plaintiff's right of action and was not admissible. The trustee never had any possession of the water rights and did not undertake to convey them nor mention them in his deed. The

easement is not conveyed by the word "appurtenances" in the *habendum*.  *Manning* v. *Smith*, 6 Conn., 289; *Grant* v. *Chase*, 17 Mass., 443.

2. It is said that the plaintiff is not a riparian proprietor and therefore has no such title as will in equity be protected.  Whether he comes within the strict definition of that term or not, yet he has a good title which equity will protect by injunction.  He bought of Ward and wife, who were riparian proprietors, the right to enter upon their land and upon the stream, to construct and maintain reservoirs and dams, and to take away water to an amount which will fill a pipe three inches in diameter.  He also by purchase extinguished the rights of all owners below on the stream against the diversion of the water by him.  And he has been in the possession and enjoyment of this right thirty years.  It is submitted that the deed of Ward and wife to the plaintiff created in the plaintiff *an estate in land* which equity will protect.  The right of a proprietor to running water is an interest in land.  *Wadsworth* v. *Tillotson*, 15 Conn., 373.  It is said however that the right to draw water cannot be assigned apart from the land itself; that it cannot be assigned in gross, and to this point is cited against us, *Stockport Water- Works Co.* v. *Potter*, 3 Hurlst. & Colt., 300.  But the American doctrine is that such a right or easement is property, assignable, descendible, devisable, and may be assigned in gross.  *De Witt* v. *Harvey*, 4 Gray, 486, 488.  Such right need not be annexed to any particular estate or be limited as to the place or manner of its enjoyment. *Goodrich* v. *Burbank*, 12 Allen, 459; *Owen* v. *Field*, 102 Mass., 103; *Lonsdale Co.* v. *Moies*, 21 Law Reporter, 664, 658.  Such a right may be created by reservation in a deed. *Hill* v. *Shorey*, 42 Verm., 614.  A canal company obtained by charter the right to take and use the water of certain streams.  They also became riparian proprietors upon a stream.  Held that, besides the ordinary rights of riparian proprietors, they had under the act a right to take the water of the stream in order to supply their canal.  *Wilts & Berks Canal Co.* v. *Swindon Water Works Co.*, L. R., 9 Ch.

App., 451, 460.    Affirmed in the House of Lords, L. R:,
7 House of Lords Cas., 697.    See also *Mumford* v. *Whitney*,
15 Wend., 380; *White* v. *Crawford*, 10 Mass., 183; Washb.
on Easements, 11, 12.    A right reserved in a deed of free
access to a well on the granted premises to take and use
the water, may be assigned to the purchasers of other lands
of the grantor.    *French* v. *Morris*, 101 Mass., 68.    Again,
the plaintiff has acquired a title by long possession and
user.    It is said that his user has not been adverse, because
he has not invaded the rights of upper proprietors.    But
whatever be the doctrine in other jurisdictions, it is well
settled in this state that special rights analogous to this one,
differing from the general one and paramount to the gen-
eral rights of other owners of land on the same stream,
may be acquired by fifteen years user without adverse
enjoyment.    *Sherwood* v. *Burr*, 4 Day, 244; *Ingraham* v.
*Hutchinson*, 2 Conn., 584.

3. The diversion by the defendant amounts to a substan-
tial injury.    It has reduced the pressure.    It has prevented
the plaintiff and his grantee from taking water into upper
stories of dwellings, has diminished the force of water at
outlets, has cut off the supply of fountains and has stopped
irrigation.    Even for domestic uses or irrigation upon his
own riparian close, the defendant may not thus prejudice a
proprietor below.    *Gillett* v. *Johnson*, 30 Conn., 180.    He must
use it in reasonable quantities and return the surplus to the
stream.    *Anthony* v. *Lapham*, 5 Pick., 175.    He may not
use it for irrigation at all, if thereby he deprives a lower
proprietor of the reasonable use of the water in its natural
channel.    *Arnold* v. *Foot*, 12 Wend., 330; *Colburn* v. *Rich-
ards*, 13 Mass., 420.    Even if the damage were not serious,
an injunction would be granted, inasmuch as the defendant
enters under a claim of right, and his act, if continued,
will ripen into a right.    *Parker* v. *Griswold*, 17 Conn., 304;
*Branch* v. *Doane*, 18 id., 241; *Swindon Water Works Co.* v.
*Wilts & Berks Canal Co.*, L. R., 7 House of Lords Cas.,
697.    It is a proper case for relief in equity.    *Garwood* v.
*N. York Central R. R. Co.*, 83 N. York, 400, 406.    Nor is

there anything in the notice of September 11th, 1881, which should save the defendant from an injunction. He gave the notice well knowing that the plaintiff disputed his right, and would oppose him by legal proceedings. He began his work the next day. He incurred expense therefore at his own risk.

4. As to the plaintiff's appeal. We say that the defendant should have been enjoined against taking any of the water away from the stream or the riparian premises so as to impair the supply of the plaintiff's pipe. The plaintiff has used his aqueduct for about thirty years. He has made market of the water since 1856. The defendant, formerly a customer of the plaintiff, purchased in 1881 two small pieces of land on the stream, in all about seven-eighths of an acre, above the head of the plaintiff's pipe, and has constructed another aqueduct from the stream to his own house. He diverts from the plaintiff's pipe as much water as his own two-inch pipe will carry. He controls the flow into one pipe by means of the stop or gate and key, and deprives the plaintiff of all control over it. He does not restore any part of the diverted water to the stream. He cites in his defense the case of *Wadsworth* v. *Tillotson*, 15 Conn., 366. But that case only justifies an upper riparian proprietor in making a reasonable appropriation of the water for domestic uses, for animals and for irrigation, *upon the riparian premises.* See comments upon this case by the same judges two years after the decision, showing that the use was connected with the upper riparian close. *Parker* v. *Griswold*, 17 Conn., 307. The defendant takes the water a hundred and seventy-two rods away from his purchased riparian premises by a pipe which passes through lands of four other parties, and only fifty-six rods of it is upon his own land, including that which he has recently bought. The defendant has no right to divert or use the water, except a right which is incident to and parcel of the land purchased of Dorman and Pentalow. "He has no property in the water itself, but a simple usufruct while it passes along. Though he may use the water while it runs over his land as an incident to the

land, he cannot unreasonably detain it or give it another direction, and he must return it to its ordinary channel when it leaves his estate." 3 Kent's Com., 439. The right to the use of a stream of water is incident to or appurtenant to the land through which it passes. *Blanchard* v. *Baker*, 8 Maine, 266; Washb. on Easements, 214; *Boynton* v. *Gilman*, 53 Verm., 19. A railroad company, which was an upper riparian proprietor, diverted the waters of a creek, taking them by pipes to reservoirs in order to supply its locomotives. They were restrained by injunction. *Garwood* v. *N. York Central R. R. Co.*, 83 N. York, 400, 405. A canal company was chartered with power to take waters from streams within a given distance of its line. A waterworks company purchased land upon one of the streams and became an upper riparian proprietor. The latter company diverted the stream in order to supply a village with water. An injunction was granted, and it was held the upper owner might take the water only for uses connected with his land. *Swindon Water Works Co.* v. *Wilts & Berks Canal Co.*, L. R., 7 House of Lords Cas., 697. Water may not be diverted by an upper proprietor in order to supply a borough with water. *Harding* v. *Stamford Water Co.*, 41 Conn., 88. If one man may, by purchasing a small parcel upon the bank of a stream, thus acquire the right to divert it to distant points, of course others may do the same thing. The defendant might divert the stream to as many distant points as he might own or control, and thus the stream might be exhausted. As to *Elliot* v. *Fitchburgh R. R. Co.*, 10 Cush., 191, cited by the defendant, the facts were that the diversion had done no damage to the lower owner, and it was an action at law. See comments upon this case in *Garwood* v. *N. York Central R. R. Co.*, 83 N. York, 407.

5. The court below has attempted to divide the waters of the stream between the plaintiff and defendant. The first branch of the judgment gives the defendant so much water as will fill a pipe one half inch in diameter. This he may take in the dry season, no matter how much the stream may be reduced if there be only enough to supply him. The

finding is, that in the summer season the stream is very small, and that "in seasons of severe drought it is reduced to a flow which will only fill a pipe an inch and a quarter to an inch and a half in diameter. In dry seasons the stream is inadequate to supply the plaintiff's aqueduct with two inches of water, if the pipe is used for drawing water all the time." We submit that the defendant has no right in equity thus to impoverish this small stream. The authorities above cited under our third and fourth heads are ample to show that he may not thus impair the supply of the plaintiff's pipe. Under this branch of the judgment he may take his half inch at all events. An upper proprietor has no such right over lower proprietors. The claim of the plaintiff is that the defendant should be compelled to allow this stream to run and flow as it has been accustomed to run and flow, subject only to riparian uses on the riparian premises. The judgment permits him in dry seasons to divert one half inch in diameter and not to restore it. Now we insist that a riparian proprietor has no right to use the water away from the riparian premises, and even if the defendant, as against us, may do so, yet he is bound to send down to us so much as, to the extent of the stream, will fill our pipe used all the while, subject only to riparian uses as above defined. *Bissell* v. *Grant*, 35 Conn., 288. The defendant ought at least to be obliged to insert into the bottom of his dam a pipe equal to the effective size of ours, and to allow the water to run continuously through it.

*C. E. Perkins*, for the defendant.

The defendant in this case is a riparian proprietor upon a small brook, from which he took water through a pipe for his domestic purposes. He has done no injury to any riparian owner below him, and no one of them objects to his use of the water. The plaintiff is not a riparian owner upon the stream, but claims that a former riparian owner conveyed to him the right to take water from the stream through a pipe three inches in diameter. This water he uses in his own house, but principally sells to others. The

defendant has erected a dam and made a reservoir on his
land at a large expense, to store the water in the dry season,
and from necessary leakages furnishes a constant supply of
water to the plaintiff. It has a waste pipe in it, by which
the defendant can at any time furnish all water needed by
the plaintiff when he is not sufficiently furnished by the
leakage. The plaintiff now claims that the defendant as a
riparian proprietor has no right to take and use the water
of the stream, and brought this complaint, not alleging that
the defendant used more than a reasonable quantity of
water, or for improper purposes, but that he had no right,
as against him, to use any of it at all. The case resolves
itself into four questions. 1. What are the rights of the
plaintiff? 2. What are the rights of the defendant? 3. Has
the defendant without right injuriously affected the rights
of the plaintiff so that he ought to be enjoined from using
the water? 4. Is the injunction a proper one?

*First.* What are the plaintiff's rights as against the
defendant?

1. We claim that the plaintiff, not being a riparian pro-
prietor, cannot enjoin one who is such above him from using
the water of the stream. The water itself does not belong
to any one; it is like light and air, but each owner of land
has a right to use it as it passes by his premises. Angell
on Water Courses, § 97. This is a right which is necessa-
rily connected with the land, and no other or greater right
can be given by such owner. Now Ward as an owner of
the land had no power, as against any other owner either
above or below, to take water for the public supply of the
village of Farmington, or on any one's premises but his
own; and not having such a right he could not give it to
the plaintiff. The plaintiff has no right as against the
defendant, to have this water come down to him for any
such purpose. The riparian proprietor alone has the right
to interfere, or at least some one who has the right to the
use of the water. This principle is clearly set forth in
*Stockport Water Works Co.* v. *Potter*, 3 Hurlst. & Colt., 300;
see also, *Hill* v. *Tupper*, 2 id., 121. If Ward as against

Wadsworth would have no right to take water into Farmington village and claim that he was entitled to have it run down to him for that purpose, clearly he could give no such right to Williams.

2. If the plaintiff ever had such a right from Ward he has conveyed it away to others. 1st. He made an assignment in insolvency to Hart which conveyed away everything he owned, and this among the rest. It never was conveyed back to him in any way, and the legal title remained in Hart. He never could get a right by prescription against the upper proprietor, for there was and could be nothing adverse in his use as against any one above him. He must stand upon the rights he received by the deed from Ward. This is not like the case of *Filley* v. *King*, 49 Conn., 211, because that was a case where the assignee rejected the claim then in question, and a creditor took it. As against the debtor King, the assignee there would have held it. 2d. If the proceedings in insolvency did not convey this property, the proceedings in bankruptcy certainly did. It is well settled by the decision of the U. S. Supreme Court, that under that law there can be not even any *damnosa hereditas*, but everything belonging to the debtor without exception passes to the assignee, and the debtor has no more interest in it than any one else, unless there be a reconveyance. Now why should not these principles be applied here to this plaintiff, who comes alleging his title to have come to him only from Ward, and trying to deprive the defendant from using this water at all in any way, so that he, the plaintiff, may make money by the sale of the water to other persons? What strong equities has he to induce the court to disregard this loss of the title to the property?

*Second.* But if the plaintiff has any rights the defendant also has rights, which he has not exceeded. He has used the water only in a reasonable manner for proper purposes, and for such purposes he is entitled to use all that is necessary at any time, either now or in the future. As a riparian proprietor the defendant is entitled to a reasonable use of the water for domestic purposes. *Wadsworth* v. *Tillotson,*

15 Conn., 366, 373.   If the water so used is not returned to
the stream, it is only a necessary loss.   What is used in
drinking or cooking or washing can never be returned.   If
the defendant has used the water improperly, the proper
remedy is to enjoin him from such improper use, and not to
fix the amount to go to him at an absolute limit never to be
exceeded.   Next year he may have more cattle or more
persons in his family and may want more water.   The claim
of the plaintiff, however, is, that the defendant has no right
to use any of the water as against the plaintiff, because the
land of the defendant on the stream is separated from the
land on which his house and barn stand by a piece of land
belonging to some one else; that is, that to enable a farmer
owning land on a brook to take water to his barn for his
cattle to drink, he must own *all* the land between his barn
and the brook.   If he does not, then he can go and drink
from the brook, but must not take a pail of water to his
house to be drunk at dinner by his family ; he can drive his
cattle up to the brook to drink, but cannot take the water
down to his barn for the cattle to drink there ; he and his
family can go to the brook to wash their faces and hands or
to bathe, but they cannot take water to the house for such
purposes.   This is too absurd to suppose, but yet the plain-
tiff's claim is based on exactly this principle ; this is only
supposing an extreme case.   All the decisions from *Wads-
worth* v. *Tillotson* to the present time lay down the principle
in general terms that a riparian proprietor may use the water
of the brook for domestic purposes at his house and barns.
In none of them is there the least intimation that this use
must be on the lot that the brook runs through, or that the
right depends on their being a continuous ownership of land
from one to the other.   The question seems never to have
even arisen in any case but once, and then it was not con-
sidered worthy of discussion by the court.   *Elliot* v. *Fitch-
burg R. R. Co.*, 10 Cush., 191 ; *Lord Norbury* v. *Kitchin*,
27 Jurist, 132.   The only ground on which the plaintiff can
claim to sustain such a principle, as it appears to us, is that
it is possible that so many people might buy land on a stream

for the purpose of taking the water to their houses, that it would use it all up, and so lower proprietors would be injured. Extreme cases may always be imagined, and ingenious counsel may show that any rule of law may be abused, but the rules of law are made for general application, and it is no objection to them that a possible injury may result from them. The question is, what is the rule that, on the whole, will be most reasonable and fair as to the use of water, and we maintain that the one we claim is the most so. If it should be found that this principle is liable to abuse, and the rights of riparian owners are being destroyed, it will be easy for the legislature to apply a remedy. It is not necessary for this court now, for the first time, to introduce such an unreasonable principle into the law of this state merely to enable this plaintiff, who does not own a foot of land on the stream, to put money in his pocket by diverting the water of the stream entirely to supply other people with it, and prevent the defendant from using the water at all. The claim of the plaintiff, if correct, would enable him to prevent the defendant from using this water at all, or, at least, when the water in the stream did not enable the plaintiff to take all the water he could get through a two-inch pipe, whether he wanted it or not, and force the defendant back to buy water again of him, which, perhaps, was a consideration that had its influence in causing this suit to be commenced.

*Third.* Whatever the plaintiff's rights are, it is inequitable to grant an injunction now. He should have taken steps to stop the defendant before he invested so much money in obtaining the water. It was for this very reason that the notice was given. The defendant knew that the plaintiff had some claims to the use of the water, and gave him notice that he was about to lay his pipe, build the dam, etc., and that if he proposed to take any steps to prevent him, he desired him to do so then. The plaintiff took no action whatever, but allowed the defendant to go on and expend over twelve hundred dollars in making the reservoir and laying the pipe, and *then* brought this petition to stop

him from using the water which he had expended so much money in procuring. It seems to us that he ought to be estopped from making any claim whatever that the defendant was exceeding his rights, and certainly he ought to be left to his claim for damages, if he has really sustained any. *Smith* v. *Smith*, 30 Conn., 111; *Mitchell* v. *Leavitt*, id., 587; *Money* v. *Jorden*, 21 Law J. Reps., N. S., Chanc., 531, 893.

*Fourth.* The injunction itself is erroneous for three reasons.

1. The defendant at a large expense has made a reservoir (of which the plaintiff also has the benefit,) and the injunction prevents the defendant from using any of the water stored up therein, at all times when the stream above it is of a certain size, without regard to whether the plaintiff has all the water he is entitled to or not. If the plaintiff has a right to a certain amount of water, and receives that amount, it is of no importance to him what is done with the rest of the water by the defendant, and so long as there is enough water between him and the reservoir to fill his pipe, it can make no difference how much or how little water is running in the stream above the reservoir. The form of the injunction practically deprives the defendant of the use of the reservoir in low water, and gives the benefit of it to the plaintiff. It would have been easy to allow the defendant to use what water he needed, provided he allowed sufficient to flow from his reservoir to supply the plaintiff.

2. The injunction is so indefinite in its terms that it does injustice to the defendant. How is he to ascertain whether the amount of water running into his reservoir will not pass through an orifice two and one half inches in diameter? And who is to decide beforehand whether such is the fact or not? Is he to take upon himself the burden of watching day by day and taking measurements hour by hour, under the penalty of a heavy fine and of a contempt of court if he makes an error in the quantity of running water? It is well known that the amount of water which will pass through an orifice varies with the velocity of the stream and the amount of head. Who is to determine all these nice questions? An injunction should be clear and definite, and

easy to be obeyed; otherwise it is a mere trap for the unwary. It should certainly not depend on so uncertain and difficult a thing as the measurement of running water.

3. This uncertainty and difficulty of decision is rendered more dangerous to the defendant by the penalty being fixed beforehand at twenty dollars per day, a definite sum for each day. Suppose he should be mistaken in his measurement, or suppose some court in the future, after a hearing for contempt, should be of opinion that his method of measuring the water was incorrect, or that his hydraulic engineer was mistaken in his figuring, but that he had in good faith believed that he was correct, still it could do nothing but what the court has seen fit to direct, fine him twenty dollars per day. An injunction of this sort, fixing an absolute penalty of this kind, ought in fairness to contain some method of dividing the water or determining the flow, so that the defendant can know whether he is violating it or not, and not oblige him to take uncertain chances without being able to find out beforehand whether he is liable to a penalty any day or not.

PARDEE, J. In 1851 Augustus Ward and wife, owners of land upon a brook which in winter will turn the wheel of a grist-mill, but in time of severe drought will pass through an orifice one inch and a half in diameter, conveyed by deed to the plaintiff the right to enter upon their land, and construct and maintain thereon, without limit as to time, works for the diversion over it to his land not riparian of as much water as will pass through a pipe three inches in diameter.

In 1852 he built a dam and from a reservoir laid a pipe two inches in diameter, and began, and to this present has continued, to divert water through it adversely as against all persons whose rights could be affected thereby,—until 1856 to the house occupied by him and the premises therewith connected, since that year to the houses of persons who have paid him for it. Prior to the close of 1857 all

lower proprietors upon the stream gave him by deed perpetual release from all claim for damages by the diversion.

The defendant, an upper owner of about an acre of land upon the brook, began in 1881 to divert as much water as will pass through a pipe two inches in diameter to his farm, about one half mile distant, no part of which is riparian, and there uses it at his house and barn, for a fountain, for irrigating his lawn, and for watering the street; returning none to the brook, but wasting a considerable portion. In the summer this use injures the plaintiff, and he asks that the defendant be restrained by injunction from such diversion as will prevent the supply of his two inch pipe. The court passed the following decree :

"Whereupon it is adjudged that, until this court shall make further and other order in the premises, the defendant be, and hereby is, strictly enjoined and commanded, at all times after the 31st of May, 1883, when the whole volume of water running and flowing in said stream into the defendant's said reservoir will pass through an orifice two and one half inches or less in diameter, to desist from detaining or diverting from its natural course, above the said dam of the plaintiff, a larger quantity or portion of the said water than will pass through an orifice or aqueduct one half of an inch in diameter, unless he return the surplus to the said stream before it reaches the plaintiff's said dam, on penalty of twenty dollars for every day or fraction of a day that he shall detain or divert a larger quantity or portion of said water in violation of this injunction ; and at all times after the said 31st day of May, 1883, when the volume of water running and flowing in said stream into the defendant's said reservoir is so large that it will not pass through an orifice two and one half inches in diameter, the defendant is strictly enjoined and commanded, until this court shall make further and other order in the premises, to desist from detaining, or diverting from its natural course above the said dam of the plaintiff, a larger quantity or portion of the water so running and flowing into said reservoir than the excess above the quantity or portion necessary to fill an orifice

and supply an aqueduct two inches in diameter, unless he return the surplus of the water diverted to the said stream before it reaches the plaintiff's said dam, on penalty of twenty dollars for every day or fraction of a day that he shall detain or divert a larger quantity or portion of said water in violation of this injunction." The plaintiff appealed for reasons as follows:—

" 1. That the plaintiff is entitled to maintain his pipe as constructed, and draw water through it at all times, and to have the full flow of the stream whenever needed for that purpose.

" 2. That the defendant has no right to divert the stream for the purposes found in the case, so as to impair the supply of the plaintiff's pipe.

" 3. That the defendant by purchasing, on September 9th and 10th, 1881, two parcels of land, being in all about seven eighths of an acre, upon the stream above the plaintiff's well, did not thereby acquire any right to divert the water of said stream and conduct the same away from said riparian premises, a distance of about one hundred and seventy-two rods, to the house of the defendant in Farmington village, so as thereby to impair the supply of the plaintiff's aqueduct."

The defendant appealed for reasons as follows:—

" 1. The court should have held that the plaintiff could not maintain the present action in consequence of the proceedings in bankruptcy, and also those in insolvency, as stated in the said finding.

" 2. That the plaintiff could not recover in consequence of the legal effect of the conveyance to Catherine Vorce.

" 3. That the court should have held that the defendant, as riparian proprietor, had a right to use the water in the manner in which he had used it.

" 4. That the plaintiff was not a riparian proprietor, and, as against the defendant, has no equitable right to prohibit the defendant from using the water.

" 5. That no such injury was shown to result to the plain-

tiff by the defendant's use of the water as would warrant a decree for the plaintiff.

"6. That after the notice of September 11th, 1881, the plaintiff was not entitled to relief by injunction.

"7. Upon the facts found the court should not have directed said water to be measured above the defendant's reservoir, but below it, as such order prevented the defendant from the use of the water so collected in said reservoir.

"8. Upon the facts found the court ought to have held as matter of law, that the defendant, as against the plaintiff, was entitled to the use of so much water as would flow through the pipe so laid by the defendant.

"9. Said judgment is erroneous, because it does not direct any method of determining the amount of water flowing in said stream after May 30th, 1881.

"10. Also, because the court assumes to fix an arbitrary amount of penalty for breach of the injunction, without regard to any knowledge or intention on the part of the defendant, and without furnishing any means for him to discover whether he is guilty of a breach of the injunction or not.

"11. The court should have admitted in evidence the deed of Austin Hart, trustee, to the defendant."

Being a riparian owner the defendant has the right to consume water upon riparian premises for drinking, culinary and other domestic uses, and for the watering of animals; this right taking precedence of any right below. But this use is to be confined to riparian land. This limitation applied to a brook stands upon the necessity for a restraining rule in order to secure something for all, and upon the presumption that the brook will supply the absolute needs of as large an area of land as is usually held in riparian ownership.

If land not riparian may draw to itself, equally with land riparian, water for man and beast thereon, because it is in the possession of a riparian owner, then land not riparian may take precedence of land riparian and deprive it of water for either man or beast. That such a possibility is

within the defendant's claim shows that it puts in jeopardy the well established rule that the right of riparian land to water for man and beast shall yield to nothing except like needs upon like land above.

By the deed thus passed to the plaintiff a right to water, not as an appurtenance to a particular parcel of land, but to be used in any place and for any purpose, so long as he did not interfere with the rights of others; and with it passed as much right and interest in the soil as is reasonably necessary for the enjoyment of the grant. In *Lonsdale Co.* v. *Moies,* 21 Law Reporter, 664, the court said : "If I have a spring I may sell the right to take water from it by pipes to one who does not own the land across which the pipes are to be carried, and I may restrict the use to a particular house or not as I please. * * Incorporeal hereditaments may be inseparably annexed to a particular messuage or tract of land by the grant which creates them and makes them incapable of separate existence ; but they may also be granted in gross, and afterwards for purposes of enjoyment be annexed to a messuage or land, and again severed therefrom by a conveyance of the messuage or land without the right, or a conveyance of the right without the land." See also *Dewitt* v. *Harvey,* 4 Gray, 489. In *Ingraham* v. *Hutchinson,* 2 Conn., 584, the marginal note is as follows :—"Though every person has independent of grant or prescription a right to the use of water on his own land in its natural course and quantity and may sustain an action for its diversion or obstruction to his prejudice, yet a special right, differing from the general one and paramount to the general rights of other owners of land on the same stream, may be acquired by an exclusive enjoyment for fifteen years ; and to this end it is not necessary that such enjoyment should have been adverse to the claims of those affected by it." And the court said :—" A special right different from the general one may be acquired by an adjoining proprietor by grant or by such length of time as will furnish presumptive evidence of a grant. In England it has been decided that twenty years exclusive enjoyment of water in a particular

manner affords a conclusive presumption of a right in the party enjoying it, derived from some individual having the power to make it, or from the legislature; and in this state fifteen years exclusive enjoyment will furnish the same evidence. * * It is however contended by the counsel for the defendant that to gain such exclusive right by possession it must be adverse to the claim of the person to be affected by it, so that he could maintain a suit; that otherwise there is no acquiescence; and that in this case there is no such adverse possession. But the rule is laid down without such qualification; the exclusive enjoyment alone is sufficient to create the right. In the case of *Sherwood* v. *Burr et al.* the defendants could never have maintained an action, for the dam of the plaintiff was no injury to them; yet the court held the possession to be sufficient to gain an absolute right." In 3 Kent's Commentaries, side page 442, it is said:—"The owners of artificial works may acquire rights by actual appropriation as against the riparian proprietor, and the extent of the right is to be measured by the extent of the appropriation and the use of the water for a period requisite to establish a conclusive presumption of right. In such a case the natural right of the riparian proprietor becomes subservient to the acquired right of the manufacturer. The general and established doctrine is that an exclusive enjoyment of water or of light or of any other easement in any particular way for twenty years, or for such other period less than twenty years which in any particular state is the established period of limitation, without interruption, becomes an adverse enjoyment sufficient to raise a presumption of title as against a right in any other person which might have been but was not asserted." In *Elliot* v. *Fitchburg R. R. Co.*, 10 Cush., 191, a riparian owner granted to the defendants the right to enter upon his land and divert water to their own premises. The court said that he and the defendants together held the whole right, and that it was "to be considered in the same manner as if the defendants owned the land."

The foregoing decision by this court concerned rights

which had, and in the opinion of the court of necessity had, an adverse use for fifteen years as their foundation. The present plaintiff will have no occasion for complaint if we subject him to the operation of that rule, as his use is for a longer period. Therefore we say that, although he is not a riparian owner, yet inasmuch as he purchased from one who is, the right to enter upon land of the latter and divert the stream from the natural, through an artificial channel to land of his own, by such diversion and use for more than fifteen years he acquired the right to have the stream then come to him in its accustomed flow, which right the defendant, an upper riparian · owner, must so far respect, that he may not injure it by subsequently commencing uses on land not riparian. And the plaintiff may protect this right by proceedings instituted in his own name. We have had no occasion to consider, and therefore do not determine, that under the circumstances of his purchase his use must have been for fifteen years before he could acquire any right which would have judicial recognition and protection.

In 1862 certain creditors of the plaintiff prayed the court of probate for the district of Farmington to vest his property in a trustee under the act for the relief of insolvent debtors. A trustee was appointed. Subsequently the plaintiff settled with the petitioning creditors and paid the expense of the proceedings, and the same were discontinued in 1863 by the probate court. The plaintiff remained in the undisputed and exclusive control of the water rights during the official life of the trustee, the latter neither taking nor claiming possession. On January 5th, 1863, the trustee conveyed to the defendant the premises then occupied by the plaintiff, in which the acqueduct then terminated, by deed describing "a certain piece of land with the buildings thereon standing * * with the appurtenances thereof," but making no mention of the aqueduct, or of the easement or of water rights.

The plaintiff had permission from the owners of the land to carry water over the same to his house. Under the grant of "land with the buildings thereon standing," this privi-

lege did not pass; not being embraced by the *premises*, it is not in the word "appurtenances." In *Manning* v. *Smith,* 6 Conn., 289, a grantor conveyed land upon which ended a pipe carrying water from a spring upon land reserved by him in the deed; the words "to have and to hold the premises with all their appurtenances" followed the description of the land. The grantee insisted that he had by these acquired the right to have the water flow to his land. The court said:—"It is insisted that the deed * * conveyed the easement in question. The words of the deed describe only the *land*; it is added 'to have and to hold the premises with all their *appurtenances*.' The deed * * did not convey any, right to the easement unless it belonged *naturally* and *necessarily* to the premises. If the conduit had been placed there a month previously, by a stranger or by the defendant, it would hardly be said that it was a part of the freehold. It would not be strictly necessary to its enjoyment. Co. Litt., 216, 122 *a*. By the grant of a messuage with the appurtenances a shop annexed to it for thirty years does not pass, unless it be found to be a part of the messuage. *Bryan* v. *Weatherhead*, Cro. Car., 17. The subject matter of the grant in the deed is the *land*, and that does not include the easement as we have seen. Can then the thing granted be enlarged by the words 'to have and to hold with the appurtenances?' It is in the *premises* of the deed that the thing is really granted. 3 Cruise Dig., 47, sec. 51. * * It is the office of the *habendum* sometimes to enlarge the *estate* granted but never to extend *the subject matter* of the grant. * * The plaintiff, grantee of the defendant, * * might have secured to himself this privilege by express grant or by covenants. He has taken this deed and it is not for the court to give it a construction not authorized by law."

In 1868 the plaintiff was adjudicated a bankrupt upon his own petition, and there was a deed from the register in bankruptcy to the assignee. The latter neither took possession of the water rights nor treated them as assets in his hands. The plaintiff paid all proven claims in full, together with costs and expenses of the bankruptcy proceedings, and

received a discharge in 1871, since which time he has been in possession of the water rights excepting such as he subsequently conveyed to Mrs. Vorce. It is the claim of the defendant that the plaintiff is barred from recovering, first, by the proceedings in insolvency, secondly, by those in bankruptcy, and thirdly by his deed to Mrs. Vorce.

But both the trustee in insolvency and the assignee in bankruptcy take the property of the debtor upon a trust, first to apply so much thereof as is necessary to the payment of proven debts and the attendant expenses; and secondly, to return whatever surplus may remain to the original owner. After the discontinuance of the proceedings in insolvency by the probate court, and after the plaintiff had obtained releases from all proven claims and a discharge in bankruptcy, and had in both instances paid the expenses, the trustee and the assignee each held the water rights upon a barren trust to reconvey upon request. The beneficial interest and right to possession are in him; and possession in fact has never been interrupted. Under such circumstances, even if he has omitted to ask for or has failed to obtain reconveyance, and neither trustee nor assignee moves in the matter, a court of equity will meanwhile upon his request and in his behalf protect the rights from threatened destruction or injury.

On April 1st, 1872, the plaintiff conveyed the dwelling house and premises owned and occupied by him at the time of the completion of the aqueduct and in which it originally terminated, together with the privilege of using water needed in and upon the same to his daughter Catharine D. Vorce, who has since occupied the same. Thereafter the plaintiff resided in a house upon adjoining land, and at both houses water has been drawn from the aqueduct for domestic and culinary purposes, for the use of animals, and for fountains and irrigation.

It is the claim of the defendant that the plaintiff by his deed to Mrs. Vorce divested himself of all title to the water rights. The plaintiff for valuable consideration sold the right to draw a specified quantity of water, retaining the

remainder.    That remainder is a valuable property; it constitutes a right which gives him a standing in court.

The defendant having knowledge that the plaintiff disputed his right to divert the water in the manner contemplated and would endeavor to prevent it by legal proceedings, notified him that he intended to take the water to his dwelling house, and requested him to institute legal proceedings by way of prevention before expense should be incurred. The plaintiff disregarded the request, and the defendant insists that he should not now be heard by way of objection.    But the defendant was not misled either by speech or silence; on the contrary he had positive and timely warning that his intention put in execution would be an invasion of the plaintiff's rights for which legal redress would be sought.    Under such circumstances the warning is equivalent to legal proceedings; thenceforth the defendant assumed the risk attendant upon his action.

The defendant should be enjoined against such use of the water upon land not riparian as will prevent the supply of the plaintiff's two-inch pipe.

There is therefore error in the decree complained of.

In this opinion the other judges concurred.